HON. R. K. HOWELL,  
HON. W. G. WYLY,  
HON. P. H. MORGAN, } *Associate Justices.*  
HON. J. E. LEONARD,

---

### No. 5921.

ISIDORE NEWMAN & BRO. VS. M. KAUFMAN & CO. ET AL.

A check is always supposed to be drawn against funds, and any one requested to indorse it as surety must show that it is to be used differently from its usual purpose, and also show clearly that some specified limit was fixed to his liability. No other object could be imagined for requiring a surety on a check than that it should be held for a time, or until funds should be provided.

In this case plaintiffs loaned Kaufman & Co. a sum of money on the check of the latter, with Weil as surety, for a time not fixed, and there was "no prolongation of the terms granted to the principal debtor without the assent of the surety," as urged in the defense. Hence the surety has not been released or discharged from the liability assumed by him.

APPEAL from the Sixth District Court, parish of Orleans. *Saucier, J.* *Cotton & Levy,* for plaintiffs and appellees. *Singleton & Browne,* for Weil, surety, defendant and appellant.

HOWELL, J. Defendants are sued *in solido* on a check drawn by M. Kaufman & Co. in favor of plaintiffs and on which Meyer Weil became surety. The defense by Weil, who is the only appellant, is that plaintiffs

are guilty of laches in not presenting said check within a reasonable time, by which he is released from liability.

The material facts, are that a member of the firm of M. Kaufman & Co. wished to borrow a sum of money from plaintiffs and give their check for the amount in favor of and to be held by plaintiffs for an indefinite time, and for which they were to receive seventy-five cents per day. Plaintiffs refused to take the check without a good indorsement. The party asked if defendant, Weil, would be satisfactory, and plaintiffs answered in the affirmative. In a short time the check was presented and accepted with Weil's name as surety on it. This occurred early in the morning; Newman says about ten o'clock, and Weil says nine o'clock.

The testimony of one of the plaintiffs and the defendant Weil is contradictory as to what subsequently occurred in regard to the promise of the latter to pay the check, and we are left to determine the liability of the surety from the whole evidence, the circumstances, and legal presumptions.

We attach but little importance to the difference of an hour in the time at which the transaction occurred. "A check is always supposed to be drawn against funds," and any one requested to indorse it as surety must know it is to be used differently from its usual purpose, and should show clearly that some specified limit was fixed to his liability. No other object could well be imagined for requiring a surety on a check than that it should be held for a time, or until the funds should be provided. In this case, we think the testimony of Newman is supported by the circumstances and presumptions, and that plaintiffs loaned Kaufman & Co. a sum of money on the check of the latter with Weil as surety for a time not fixed, and that there was no "prolongation of the terms granted to the principal debtor without the assent of the surety," as urged in defense, and hence the surety has not been released or discharged from the liability assumed by him.

Judgment affirmed.

———

Morgan, J., *dissenting.* I think the defendant is not bound.

When he indorsed the check in question I think he only guaranteed that, at the time of its date, the drawer thereof had the amount of money which it called for in the bank upon which it was drawn. I do not see how it can be distinguished from any other check. I understand the law to be that, to make the indorser of a check liable it must be presented within a reasonable time. Here plaintiff kept the check in his possession for several weeks without the knowledge of the defendant. He was, I think, justified in believing that the check had been presented and paid. His right in this regard, I think, is made apparent from the

fact that the record discloses that, between the date of the check and the time it was presented, the drawer had sufficient funds in bank to pay the same.

———

LEONARD, J., *dissenting.*  I can not coincide with the views of the majority of the court in this case.

The obligation upon which plaintiffs sue is as follows:

"NEW ORLEANS, August 19, 1873.

"Citizens' Bank of Louisiana, pay to the order of I. Newman & Brother seven hundred dollars.          M. KAUFMAN & CO."

Upon the back of the check appears the name of "Meyer Weil," one of the defendants in this suit.

It is agreed by counsel upon both sides that the obligation of Weil is that of a surety.  But what is the extent of this contract of suretyship?  Leaving out of view the testimony of Newman, plaintiff, and Weil, defendant, in which they directly contradict each other, we have no evidence upon the point in question, except the instrument itself.  By its terms alone, therefore, must the obligation of the surety be tested.

A check is defined by Parsons to be "a brief draft or order on a bank or banking-house, directing it to pay a certain sum of money." Bills and Notes, vol. ii, p. 57.  "They are seldom made or rightfully used for circulation."  Therefore, he adds, "in regard to their presentation for payment, a few days delay would charge the holder with negligence." *Ib.* p. 79.  "With respect to a check on a banker," says Chitty, "it is now settled that it suffices to present it for payment to the banker at any time during banking hours on the day after it is received, and that no laches can be imputed to the holder in not presenting it for payment early in the morning of the second day." Chitty on Bills, p. 385.  "A banker's check," says Greenleaf, "may be presented on the next day after its date; this being considered a reasonable time."  Evidence, vol. ii, section 179.  See, also, Byles on Bills, p. 123.  Without insisting upon so stringent a rule, it is certain that checks must be presented for payment within a short time, say a few days at most, after they have been drawn.

In the leading case of Down vs. Halling, Eng. Com. Law Reports, vol. x.  Halroyd, justice, said: "A check is payable immediately, and the holder of it keeps it at his peril.  Now, in this case, the check had been due five days at the time it was taken by the defendants.  That was a circumstance that ought to have excited their suspicion.  I think that when the defendants took the check, more than a reasonable time for presenting it for payment had elapsed."

The contract of the surety, Weil, in the case at bar was, that he would

pay the amount of the check to the holder in case it should be dishonored upon presentation, and his principal should fail to discharge the debt that would be fixed by the protest. The law merchant, however, declares that this presentation for payment must take place within a reasonable time. The obligation of the surety, therefore, reduces itself to that of paying the amount of the check to the holder, in case the bank should fail to pay upon being duly requested to do so within a few days of the date of the contract. The implied obligation of the holder of the check is, that he will use all reasonable diligence to collect the amount of the check from the bank. If he neglects to do this, he can no longer look to the surety, because he has himself failed to carry out the terms of the contract. The check of Kaufman was not presented until November 18, 1873, three months after it was drawn. Can it be reasonably supposed, in the absence of any testimony to that effect, that Weil ever intended, when he became surety upon the check, to remain surety for any such length of time? One might very well believe, in writing his name upon the back of another's check, that it would be paid if presented in the ordinary course of business, or, if not paid, that he could make the money out of his principal. But does it follow that he would agree to become surety for the debt of the drawer, as represented by the check, for a term of months or years at the option of the holder of the check? His obligation was manifestly conditional, but this interpretation would make it absolute and unconditional, as though he had bound himself as surety upon a promissory note. I conclude, therefore, that Weil only bound himself as surety upon the check sued on, with the understanding that the check was to be presented within a reasonable time; that, as it was not presented for three months, manifestly an unreasonable time, the holder could have no recourse against the surety according to the terms of the latter's contract. But even assuming that Weil became absolutely liable as surety for the debt represented by the check when he wrote his name on the back of that instrument, has he not been relieved by the act of the holder, Newman? Article 3063 of the Civil Code declares that "the prolongation of time to the principal debtor, without the consent of the surety, operates a release of the latter." The same rule is recognized by the general commercial law. "The acceptor of a bill of exchange," says Best, C. J., in Philpot vs. Briant, 4 Bing., 717, "is considered as the principal debtor; all the other parties to the bill are sureties that the acceptor shall pay the bill if duly presented to him, and if he does not then take it up, that they, on receiving notice of its nonpayment, will pay it to the holder. But if the holder gives the acceptor further time for payment, without the consent of the drawer or indorsers, he discharges them from all the liability that they contracted by becoming parties to the bill." In the present case the principal debtor was the

drawer, Kaufman; it follows that no extension of time could be granted to him without operating the release of the surety, Weil. Now, although it has been urged that Newman had a right to keep the check for an indefinite time, and to present it when he pleased, yet, it has not been shown that he had a right, by the express or implied consent of the surety, to bind himself not to present the check at all. The most that can be claimed is, that the check represented a debt of Kaufman, due and exigible, and that Weil could at any time, by paying the debt to Newman, exact it from his principal. It seems, however, that Newman, after receiving the check, bound himself not to present it, nor to exact the debt from Kaufman, for an indefinite period, and that this contract was made for a valid consideration. Here is the testimony of plaintiff himself upon this point:

Question—" He (Weil) agreed to pay you interest on the seven hundred dollars ?" (This was the amount represented by the check.)

Answer—" Yes, sir."

Question—" How much ?"

Answer—" Seventy-five cents a day. He never paid it; he agreed to pay it, but never paid it."

Question—" Was that the agreement he made with you at the time he got you to take it ?"

Answer—" Yes, sir, it was."

Question—" How many days did you agree to hold it ?"

Answer—" It was indefinite."

Question—" As long as he paid you seventy-five cents a day were you to hold it ?"

Answer—" Yes, sir."

It will thus be seen that Newman not only gave the debtor time for the payment of the debt beyond the terms of the contract (for a check is payable on demand), but actually bound himself not to present it as long as the seventy-five cents a day were punctually paid by the drawer. Could Weil, then, have paid the check in the hands of Newman and exacted payment in time from Kaufman ? Manifestly not. He could acquire no greater rights against his principal than those possessed by the indorser. Kaufman would still have the right to pay the seventy-five cents per day, and thus reserve the payment of the debt for an indefinite period. The surety might see the property of his principal wasting away before his eyes and yet could take no steps to secure his liability. Is it possible that one can be held to have bound himself by such an obligation who simply wrote his name upon the back of a check as surety for its payment when duly presented ? The obligation of the surety is not merely *stricti*, says the jurisconsult, it is *strictissimi juris*, and could not be extended by implication beyond the express terms of his contract.

" And it behooves the party who seeks to render one person liable for the debts of another," said the Supreme Court of Louisiana in Hazard vs. Lambeth, 3 R. 273, " to prove such liability beyond all doubt." This, I think, has not been done in the present case.

Rehearing refused.